oral argument not to exceed 15 minutes per side. Mr. Durrance and Mr. Leibovitch vote arguing for the defendant appellate. My name is Jason Durrance. I am here with my co-counsel Mr. Joe Leibovitch. Together we are representing the appellate defendant, Shelby County TN. My co-counsel and I will be dividing both our time and the issues on appeal in our argument today. I will address the summary judgment and release issues. My co-counsel Mr. Leibovitch will be addressing the post-trial motions to set aside, alter or amend the judgment. We will also be reserving two minutes for rebuttal if it pleases the court. Your honors, with regards to the summary judgment and release issues in this case, the county's position is very simple. We believe that this case and the release in this case are governed by both USERA section 44302 and this court's precedent in Wysocki v. IBM. The issues before this court today really come down to two points. First, we the county believe that the trial court erred in denying the county's summary judgment motion for judgment in favor of the county based on the release. In the alternative, even if the court finds that the release was not sufficient to have summary judgment in favor of the plaintiff on the release issue, such that... I think there's a fact question there in other words? In the worst case scenario for the county, your honor, we think that... There's an interpretive issue. Correct. This is a very, this is an interesting case.  So what does this mean? But then if you, if we disagree with your interpretation, you're saying there's a fact issue about what's better for Mr. Ward. Absolutely. At the very least, your honor, we believe that what should happen today is this court remands, or excuse me, sets aside the grant of summary judgment in favor of the plaintiff and remands for a new trial. Why don't you, I mean, this is the danger of splitting one count for one party. In the time you have, why don't you tell us about your interpretation? I mean, let's talk about these two points, the interpretation first. Certainly. So in this court's precedent in Wysocki, we believe that the interpretation was very clear. This court used the legislative history, the House report and the Senate committee report to determine that waivers of USERA rights are permissible, and they are permissible either through explicit language and release or impliedly through conduct. And now that's really where the district court and Mr. Ward's interpretation of this statute and Wysocki diverge from the county's. We believe that the words in reference to being able to waive a USERA claim impliedly through conduct means one, through the word impliedly, there does not need to be explicit language and release, like veteran status in Wysocki. It doesn't have to say USERA claim. Correct. We would go further and say it doesn't even need to reference military service or veteran status. And that's because of the second part of the legislative history I just quoted to the court. Or the text itself. Absolutely. And being able to waive a USERA claim through conduct means that there doesn't necessarily need to be release language at all. What about this issue of whether the plaintiff had to think that the waiver was more beneficial for him than his USERA rights? So, Your Honor, we would say that first, for our proposed interpretation of Wysocki and USERA as a whole, this notion of a waiver being more beneficial to a plaintiff really comes down to the universal contract interpretation principle that courts don't weigh in on the sufficiency of consideration. Where there is consideration recited in an agreement, here, we had 3,000 plus dollars in payment that was going to Mr. Ward as part of this release. When that... The courts don't weigh in, but here there was a legal requirement that, arguably at least, that the waiver be more beneficial than his rights under the statute. So, you know, we could argue all day long whether that's a good legal principle or matters of policy, but if that's what the state of the law is, then was the waiver more beneficial than not? So Your Honor, I would say that the courts can look to what parties like Mr. Ward himself say initially about the sufficiency of that consideration. Here, by signing the release agreement, Mr. Ward told us, at least initially, that consideration was good enough for him. And Judge Martin... I'm going to argue that he wasn't properly informed and he never benefited, he never implemented the agreement that he signed because, I guess, within two weeks later he renounced or repudiated the... And that's where... And actually, he's got a good argument that the signing of that settlement was not more beneficial because if you look at the verdict that was returned and eventually returned in the case, that would be pretty good evidence that he was giving away way too much because he was... If you look at the jury verdict that happened down the road in terms of back pay and front pay and everything else, he was waiving his rights for pittance compared to what he was entitled to. So Your Honor, I have two points to address that concern, a broad one and a specific one. Broadly, and this gets into our argument in the alternative, broadly when we have a situation like the one Your Honor just described or perhaps the situation as it exists here, when a party wants to essentially place the waiver at issue and essentially rescind the waiver as part of the litigation of the underlying usurer claim, that is a fact question. Judge Martin and his concurrence laid out the potential order of battle, if you will, where the Judge Martin indicated that producing a waiver like the one we have here satisfies the burden of production on the defendant's part, the burden then shifts to the plaintiff to show that that agreement was not as beneficial as his usurer rights would have been. So that should be a fact question because as Your Honor noted here, when the judgment can be as it was here, over a million dollars, no defendant is going to offer their absolute worst case scenario initially as settlement. Let me just, because the red light is on, Mr. Ward had counsel at the time he executed this, made this initial decision, right? He absolutely did and that is certainly a distinction from Wysocki where there was. It seems to me we have two questions here. Number one, at what point in time do we make this determination regarding whether one thing is more beneficial to another? And number two, whose knowledge and judgment ought to be determinative? Should it be us post hoc or just us or should it be the individuals? So Your Honor... Why wouldn't like a week later count though? So here the individual changes his mind a week later. Why shouldn't we look to that as opposed to the moment he signs? Your Honor, two points to that. The court shouldn't look to after the fact feelings of the waiving party because frankly buyer's remorse can come up in any settlement agreement and so... Where do we draw the line? A week, two weeks, ten days? Your Honor, I believe that in a situation where a party, one, knows of their usura rights and two, has the advantage of counsel, that the moment they sign that agreement, that's when the court should start, or excuse me, stop looking at the sufficiency of consideration and the sufficiency of the benefits of the release. All right. I wish we could talk more about this, but we're going to talk about something else or whatever. Although I know you're out of time not to prolong this, but is it a matter of, is it a requirement that whether he was being benefited more by waiving his rights or by maintaining his rights? In other words, the legal issue is not couched in terms of contractual consideration. And I think that that's absolutely part of the problem that the district court's ruling on summary judgment has, Your Honor. I believe the district court said that objectively no jury could find that the $3,000 plus Mr. Ward was offered and accepted could have been more beneficial than the, I believe at that point it was 17 weeks or months of back pay that he would have accrued. That's because benefit can encompass more than just the dollars and cents. It can encompass, you know, the party's lifestyle at the time, whether they have other stressors, you know, what's going on in their personal life that they may not want to engage in protracted litigation. That's why the county would submit at the outset that once a party weighs the options and signs on to a settlement agreement, they have done that internal weighing of all of their individual subjective factors for themselves. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. My name is Joe Labovitch with Appellant Shelby County. Even if the court does not reverse the district court on the summary judgment issue, Appellant does request that the court reverse the district court on its denial of Appellant's Rule 50 motion for judgment as a matter of law. Let me ask you this. What if, you know, we find there's an issue of fact, is the county suggesting that we try everything all over again, or do we just send it back for, to resolve the contractual issue? It's a complicated question, Your Honor. If you find that there's a question of fact as to the release, that, yes, that could trigger a new trial. However, even finding that, a reverse, excuse me, a granting of judgment as a matter of law would have been appropriate in this case, in the face of it, based on the fact that the plaintiff didn't carry his burden to show that military duty was a substantial or motivating factor in his termination. Realistically, if you find that there's a question of fact on the release, I think you probably do have to remand for a new trial for everything, and maybe you don't even get to this. Wait a minute. You say that military duty wasn't a factor. The record in the district court seems to be clear that there's an investigation of abuse of these payments, and that the investigation was only directed toward military people who were employees, and not the non-military employees. So the record seems to be clear that there were usury rights that arose because the detrimental action was directed only against the military reserve or former military people. I would respectfully disagree with that, Judge Clay, and here's why. First and foremost, the investigation was a criminal investigation by the General Investigations Bureau of the Sheriff's Office. They would investigate crimes alleged against the community, by a member of the community. It's not like an internal affairs division. It was an independent criminal investigation. So what? Is your argument that no reasonable jury could find that his military status was a factor in the treatment he got? Yes, Your Honor. That is our position. Again, here's why. Real stretch. I mean, I don't know if we have other things to talk about, but I mean, okay. You can use your time, although we can't give you more time in this double arrangement. Well, I do understand that, Your Honor, but it keeps, and I won't belabor this, but the point here is that there was a criminal indictment by the state of Tennessee. That doesn't decide something as a matter of law for purposes of what a jury can decide, and later they dropped the charges. But the policy that was relied on, much as in the Escher case that we cited too, there was a violation of policy. An individual employed by the jail was indicted of a felon for an alleged felony. That's a policy violation. That's not because of the military leave. It's because of the indictment. If they were going to... But purportedly only military people were audited. That's a pretty pertinent fact, don't you think? Respectfully, that's not correct on the record, Your Honor. The audit included multiple employees. The independent... They were all military people. No, they were not. It was an audit of the HR office, of the Shelby County Sheriff's Office, which included individuals who were not military members. The General Investigation Bureau, criminal investigation, did focus on military, but they don't make hiring decisions. They don't make firing decisions. They don't make disciplinary decisions. So you're saying that only the criminal investigation was directed toward military people? That's correct, Your Honor. Well, that proves the point. Respectfully, Your Honor, we disagree because it's an independent criminal investigation, just as it would be if Walmart alleged this. The argument that just because military leave is in the picture, that it is a motivated factor, can't be the case. If you accept that argument, then anytime somebody is alleged to have fraudulently used military leave, they can't be terminated. You're just saying a jury could fine. What you're arguing is, if it's as a matter of law, that's enough. This is post-trial. The idea that a jury, no reasonable jury, could fine this, I think there are harder questions in this case than this one, really. You guys are getting close to having more than 15 minutes in your total. I'm going to move on to the issue of whether the case, first, whether it was appropriate for the court to award liquidated damages. Here again, we believe that under the Kohler v. Pepsi Americas case that we cited, that liquidated damages were not appropriate because there was no indication of a willful violation of USERRA. Most importantly, I want to spend the remainder of my time talking about that the lower court should be reversed as to the issue of altering or amending the judgment. The damages that Mr. Ward should have accrued, if he properly won this case, should have been limited to those that accrued on or before September 16th, 2016, the date he was to return to work under the agreement that we've talked about before. Before liquidated damages, the judge had to decide that the violation was willful, correct? The jury did fine that, yes, your honor. And that decision was wrong for what reason? Frankly, it ties into the whole argument as to whether there was a violation at all. So I don't want to belabor that issue at this time. Simply relying on the mere fact that it was in the picture, that military leave was in the picture, does not show that it was a violation, a willful violation. Here, there was a criminal investigation, there was a follow-up investigation on the administrative side. Much effort was put into this to determine whether or not there was a violation of policies. And finally, there was an indictment by the state of Tennessee. So through all that process, liquidated damages is not appropriate because that is not sufficient to show. Okay. What standard of review are we supposed to utilize to determine whether the judge wrongfully decided that the violation was willful based on the, I suppose, based on the evidence at  Abuse of discretion, your honor. Okay. I am out of time. I did not get to address the other issue, but I'll be happy to. Thank you. Good morning, your honors. I am Thomas Trardum and with my co-counsel, JP Schnapper, here on behalf of Cedric Ward, who is here also with us today. I want to hit on some of the harder questions that you asked about first, Judge Eldridge, with regard to the validity of the waiver under USERRA. This court very carefully analyzed the two-step analysis that's presented from 4302 in USERRA. 4302A provides that USERRA is the floor. An employer can give a service member greater things and not violate the act. It doesn't say quite that. It says, you know, more than, well, it does. Well, whatever. Okay. I get it. Basically, USERRA does not preempt greater benefits. Well, we know what it says. Would you agree that the release need not say USERRA claim and that, just as an interpretive matter, and this isn't about whether it's more beneficial or not, but that a release that says, I waive any claim whatsoever, ought to be a clear enough waiver of this claim along with any other? I think what this court announced in Wasaki was that the language of the release needs to be sufficient to inform the service member. All right. So, any claim whatsoever would seem to cover that. Is that fair so we can, like, move on to? I don't believe just the reference to any and all claims. The waiver and release in this case is about 44 words long. It's about as skimpy as you can get when you want to write a release. It almost makes it easier. There's no, it's not buried in there. When we look at, Your Honor, when we look at the case in Wasaki, the release was comprehensive and the district court said, although it doesn't say USERRA, IBM lists out a very broad range and it goes through about three or four different statutes. I think they mentioned discrimination three times. You know, he waives any and all claims whatsoever. I mean. If that had been the case in Wasaki, Wasaki probably would have, may have been decided differently. That's what I would suggest, Your Honor. I think when we look at Judge Martin's, and I like Judge Martin's concurrence in Wasaki. Which is totally not binding on us. No, it's not binding. But I think it's. It's not, you know, a sacred writ either. No, it's not. I mean, it's not important to consider. It is. I like the way he breaks it down. Number one, number two. And he says, looking at the face of the document, if it's clear that they declared that they're releasing their rights, and if it's clear that they received substantial consideration on the face of the document, it's just not enough to determine whether or not that's more beneficial or not. Okay. So why don't you talk about that point? How do we, why wouldn't we decide this as of the time of the agreement, rather than with the benefit of hindsight? And one concern about the hindsight, I mean, obviously, if we look at the jury verdict, you know, then it wasn't more beneficial. But if that's going to be the test, no, no military person with a USARA claim is ever going to be able to waive when, in his judgment, that's better for him in a particular case. There's never going to be a settlement agreement. That person, no matter whether they have an urgent need for money because somebody is sick in the family or whatever, they're never going to be able to enter into a settlement agreement because it's just, it's sort of like when the defense is offside. You just get a free play. I'll pocket the settlement agreement and I'll take you to trial and if I get more, then the settlement agreement doesn't count. So nobody's ever going to enter into a settlement agreement. If we're going to look at a jury verdict and say, you know, that's, it shows it's more beneficial. Isn't that, I mean, that's the reality here. I don't believe that's the reality of this case and, you know, obviously, the jury kind of validated Mr. Ward's concern, you know, 17 months of back pay, lost pay. I mean, you know, the guy throw, you know, it's like throwing the long pass on an offsides play and it's complete. So, okay, well, anyway. But here, as Judge Clay pointed out, Mr. Ward did not accept this consideration. He rescinded the agreement before he received anything. In Wasaki, the fellow collected the $6,000. In the other two cases, the folks collected the money and they walked away. Then they came back and said, hey. That goes to the point in time, you know, more precisely. Yes. Is it, but why wouldn't, I mean, if we don't make it the time he enters into an otherwise legally enforceable agreement, I mean, what, how is it not totally arbitrary to pick some point in time later? Here it happened to be a week later. He had counsel for this decision. He did have counsel, Your Honor. Why wouldn't that stick? If this, this is a subjective analysis that was argued by appellants on appeal, which I presented a search of the court. This was never argued below. This was not presented to the trial court judge. But if it was presented to a trial court judge, there was no analysis whatsoever with regard to the second step. They didn't put on evidence the second step below and to the trial court. And it was their duty to do that. And if we're going to. The second step being more beneficial? The second step, whether it's subjectively more beneficial or not. They had to, they had an opportunity and a duty to do that. At motion to dismiss, they sought. And we argued and the court analyzed all of Wasaki, both steps, one and two. But we have to interpret the statute correctly. Yes. We're not going to interpret it wrongly based on party presentation if that, in fact, was the case in the district court. I'm sorry, I didn't quite understand. Well, I'm sorry, I'm mumbling. We have to, we're not, we have to interpret this thing correctly. Now, maybe the issue is just not presented. But in your view. But we're not going to say something wrong about the statute just because somebody didn't say otherwise in the district court. I think, well, the posture of the case is very important, Your Honor. We had moved for summary judgment against defendants' affirmative defense. They have an obligation to present evidence to the trial court as to both steps. And the trial court was very clear that appellants did not adequately address the second step. Okay. And that's very clear from the record. If we were going to go back and look to the answer, like, what point in time do we make this determination? I think certainly before the consideration is ever accepted by the release or, all right, that would be a good point. I guess, I mean, I understand your point. It's kind of about waiver and I'll take a look at kind of where things stood in the district court about whether beneficial was actually presented to the court. But just let's set that to the side. If we do look at beneficial, why shouldn't the individual be able to make his own judgment at a point in time about what's more beneficial to him taking into account all the circumstances rather than courts deciding that? Because it's not just, as Mr. Durant said, I mean, it's not just dollars and cents. There are many other circumstances in a person's life that might make them, might make it more beneficial to get a sum of money now. They might have a, you know, a terminal cancer condition. They're not going to be around in two years. Why shouldn't we let the person with more knowledge about what's best for him, namely the service member, why not let them make the decision about more beneficial rather than courts with much less information? I believe, I absolutely believe Mr. Ward is the only person that should be able to waive those rights. Okay. Right. And when considering what he did at the time, whether or not he was under duress or not, those are also factors. So if he makes a decision with counsel to waive the right and take some other benefit now in return, why shouldn't that decide the issue of benefit? It shouldn't. The question would rather be did he do so without any, with some sort of, first of all, whether he was aware of his rights, which we argue he was not. He had a lawyer. Right. That's right. And he was asked in his deposition, you resolve this matter with the county? Well, I wanted my job back. The attorney presented me with the paperwork saying this is what they will do, either take it or leave it. I had been out of work for 18 months, so I signed it. Then a couple weeks later, he says, good morning, it's been almost two years, since I was relieved from the duty of the sheriff's office, I'm not coming back. So in my best interest, I've decided not to return to the sheriff's office. That's what he was thinking at the time. If defendants wanted to make that argument below, that at the time that he accepted this release, he knew he was giving them up voluntarily, and he knew that it was more beneficial to him, they should have taken time in his deposition, for example, to discuss with him, what did you think was more beneficial at the time? Why are you reneging on this agreement? Why are you doing this now? Well, what I'm suggesting is that as a matter of law, perhaps we ought to be just accepting the decision the individual makes at the time, without a trial about whether they really thought it was best. I mean, they made a voluntary counsel decision, that seems to speak a lot about what an individual thinks. Well, in the sense that it's a take it or leave it moment for Mr. Ward, and he reconsidered it. There's a point where it's like, beyond this, I'm going to trial. Other aspects of the law, you know, ADA, there's a revocation period, there's 21 days, there's seven days. That's statutory, it's in the statute. Here we have 4302, and I think it's much more powerful. What's that? 4302. Are we talking about the AB thing? Yes, AB, I think B is much more powerful. Okay, that's fair. It very much prunes it. I'm going to switch gears here with regards to the judgment as a matter of law. Appellants hang their hat on the Escher case, which I think is easily distinguishable here with regard to what actually happened. Mr. Escher was fired from his job for using personal emails over 1,000 times in a short period of time. In that case, the court analyzed, you know, temporal proximity. Got fired for that? He got fired. I guess a lesson to the, you know, all of us. It's different for the reason the way the court analyzed it. Strictly business, huh? Very quickly, the court went through the Sheehan factors, which are used to analyze circumstantial evidence in these cases, in USERA especially, and it found there's no temporal proximity because the record was clear that the final decision maker had no idea that Mr. Escher had filed some claims within. The court did not analyze and try to separate out Mr. Escher's military service. At the end of the day, the court said even if he had made a prima facie case, it wouldn't have made a difference because the employer had just terminated another employee for using her email 200 times to sell hats at work. So they wouldn't have made the same decision anyways. And they eliminated the motivating factor element. With regard to whether, there's a burning question, and it's like, can you get fired for this policy that says you're charged with a crime? And I think you could if it was standing alone. And this court has answered the question twice before in Petty 1 and Petty 2 versus the city metro police department. I can't remember the full name. And in that case, they said if the motivating factor was influenced by an improper factor, then that follows, I don't have the exact quote here, but it follows that the ultimate adverse employment action also is tainted by the same improper investigation. Here appellants want to focus on the criminal investigation. We've never argued that the criminal investigation, the indictment, the arrest, or any of the horrible things that happened to Mr. Ward because of that criminal investigation were an adverse employment action taken by an employer. The adverse employment action is initiated by Detective Sumner when she only investigated folks who were in the military, who had taken military leave. And going back to the discussion with regard to the, what's that? The counsel on the other side indicated that the investigation was broad, that it wasn't just military folks. No, that's incorrect, your honor. I'll explain it to you. The audit that was taken by the sheriff's office of the sheriff's office leave use included AWOL, sick leave, FMLA abuse, as well as some folks who were identified as possibly of abusing their military leave. Mr. Ward was never in that audit. His name was not identified. His name came to the attention of the sheriff's office because Detective Valentine, and remember I'm not focused on the criminal part, Detective Valentine went and picked all the people that took military leave and plugged them into the investigation. And he picked up that whole investigation and he handed it over to the employment side. Detective Sumner only investigated people who had taken military leave. And that's where it spun out of control for the sheriff's office. If the sheriff's office had taken that audit and gone out and looked at all the AWOL people and all the FMLA stealers and all the sick leave stealers and all the military leave over and whittled it's way down through the lotter mill hearings and all that good stuff like that, then we wouldn't have a case here today. That's not what happened. It's kind of the fruit of the poisonous tree. If the initial employment action only targeted service members, which it did here, clearly the ultimate adverse outcome was influenced in part by his military service. With regard to the issue of willful, very briefly, this is an abuse of discretion. There was some post-briefing notices of additional authorities. We look at the case Thomas v. Broward County. In that case, the issue of willful under USERRA was submitted to the jury after the fact. The judge decided to treat it as an advisory opinion, which it was not. The court found under operation of FRCP 39 that that had been submitted to the jury. In this case, there... How do you draw the line between the regular violation and the willful violation? How do we draw that line? Well, the jury was asked whether or not the actions were willful and they received an instruction, no reason to believe they did wrong. But the evidence before the trial was pretty clear that both the administrative employment investigation file included a copy of USERRA. And Mr. Ward, during his pre-disciplinary hearing, which wasn't a pre-disciplinary hearing because this was way after he got suspended without pay, but before he was fired, that disciplinary hearing included Mr. Ward discussing USERRA, USERRA was in the file, he went through every single one of his leave days, every single one of his leave days proving that he didn't do anything wrong. And ultimately, ultimately, Chief Fields testified that Mr. Ward was offered his job back because he didn't do what the county said he'd done. And he should not be punished for having served in the military service. With that, Your Honor, unless there's other questions, I think my time is up. Thank you. Thank you. Mr. Ward mentioned his USERRA rights at his pre-disciplinary hearing, as you just heard, and as is stated by the record, he was aware of his USERRA rights at the time of his arrest. He was aware of his USERRA rights at the time he signed the release. There is no question that prior to the time he signed his release, Mr. Ward was aware of USERRA. He was aware that military leave was at issue in this case. Nothing in USERRA has a requirement of magic language for release of claims.  In Appley's argument, they mentioned the ADA, I think they probably meant the ADEA has a requirement for rescission period. Congress could have required that here if they felt that a rescission period was appropriate in USERRA cases. Congress could have put a requirement in USERRA that there be language that mentions the statute, which the ADEA has through the Older Worker Benefits Protection Act. Congress could have done that and chose not to. There is no requirement under the statute that a release mention the statute at all. There is no requirement for rescission period. That being said, when do you judge when an agreement is made? Here, Mr. Ward signed an agreement with advice of counsel. He waived his rights. He doesn't have a right to come back a couple weeks later and say, never mind, I've changed my mind, no deal. There's no authority for him to be able to do that. The release was good. That's why summary judgment should have been granted as to Shelby County in this matter. As for the argument about adequacy, frankly, we believe we did argue the adequacy issue in the summary judgment phase. What did you argue about whether it satisfied more beneficial? We argued that it did because that was Mr. Ward's choice. Bear in mind that this agreement wasn't just about three weeks' pay, he was also being stated to his job. You can't just look at that small amount of time. Probationary thing, though, right? I apologize, Your Honor. It was a six-month probationary period to the exact same job he had before. If he had gotten past that six months, he would have been able to continue. If he had failed the six months, maybe he would have had a USARA claim at that time. Just last real quick, what did probation mean as a practical matter there? The record doesn't reflect that. Okay, that's a good answer. Thanks. Thank you, Your Honor. Thank you. Thank you both for your arguments and the case is submitted.